## Commonwealth v. Abruzzeese et al.

*Bernard E. Naef,* for plaintiff.

*Paul A. McGinley,* for defendants.

DIEFENDERFER, J., December 22, 1952.—An agent of the Department of Agriculture under the Pure Food Act, commonly known as the Sausage Act, arrested defendants.

The information stated that the agent had entered the establishment of defendants, known as "Marco's Doggie Shop", and that at this establishment he had purchased a *hamburger pattie,* and that he had it examined and that there was a certain cereal content mixed with the ground meat, contrary to the provisions of the Sausage Act.

Testimony was then introduced by one Edward William Reese, who was called upon on behalf of the Commonwealth, and testified that he was on the Board of Chemists, and that he had analyzed the hamburger pattie, and found that it contained cereal. He testified, however, that it was not contaminated, and that the hamburger pattie was eatable at the time he received it.

The prosecution, which was a criminal prosecution, was brought under the Act of May 13, 1909, P. L. 520, as amended by the Act of April 6, 1911, P. L. 51, 31 PS §901, as amended several times thereafter, section 2 of which provides that for the act sausage or sausage meat shall be held to be comminuted meat as defined by the Department of Agriculture. The Department of Agriculture thereafter set up definitions and standards and in section 709 of title 2, chap. 7, of the aforesaid regulations sought to define hamburg, hamburger,

hamburg steak and beefburger steak, and this section was introduced into evidence at the time of the hearing by the agent, Earl C. Derr, in his testimony. It must be noted that in no place under section 709 is *hamburger pattie* included as defined.

Can defendants be convicted under the Sausage Act for having sold hamburger patties containing cereal?

It is a well-established principle of criminal law that a statute must be strictly construed, and therefore, if the statutes do not include hamburger patties as being present within the provisions of the act, then defendants cannot be convicted on this count.

A case very similar to the present case was tried in the Court of Quarter Sessions of Northampton County, before Judge Laub, being the case of Commonwealth v. Drucker, 38 D. & C. 169 (1940), in which defendant was accused of placing pork in a certain article of food, to wit, hamburger. The court there, upon inspecting the act, found that hamburger had not been defined in the same, and although it contained definitions of hamburg and hamburg steak, it having not contained definitions of hamburger, the rules and regulations were excluded from consideration. A portion of the same is here quoted:

"The proceedings were brought under the Act of June 1, 1937, P. L. 1127, which amended the Pure Food Act of May 13, 1909, P. L. 520. An examination of the aforesaid act of assembly and the amendment thereto does not show that the word 'hamburger' is defined in any of same.

"At the time of the hearing the rules and regulations of the Department of Agriculture were offered in evidence. The trial judge examined such rules and regulations and found no definition of 'hamburger' therein. There were definitions of 'hamburg' and 'hamburg steak' and consequently such rules and regulations were excluded.

"The merchandise in question was purchased by complainant, Mr. Wismer, an agent of the Department of Agriculture. It was delivered by him to a food chemist of said department, to wit, Dr. Howard E. Gensler, who testified the meat was in prime condition, the color was as in hamburger, that it was ground meat, and that an analysis of the contents of the package showed that it was not hamburger and that it contained a considerable portion of ground pork, and did not contain any decomposed or contaminated meat. The Commonwealth's testimony did not in any way tend to prove that the article purchased contained contaminated or decomposed meat. Mr. Wismer testified that the words 'hamburg' and 'hamburger' are used interchangeably and that the words mean comminuted beef. However, there is nothing in the aforesaid acts of assembly, or in the rules and regulations of the department, that give us such a definition.

"The statute under which this prosecution is brought is a penal statute, because by reference to its provisions it shows that in the event of the fine and costs not being paid defendant shall be sentenced to undergo an imprisonment in the county prison for not more than 30 days. It is a well-known principle of law that penal statutes must be construed strictly and in the absence of any definition of 'hamburger' in the food acts or in the rules and regulations of the Department of Agriculture of said Commonwealth we do not think the definition of same should be permitted to be defined by various so-called food agents or chemists of said Commonwealth.

" 'The term "bacon", while most properly limited to cuts from the backsides and belly, does not have a fixed and certain meaning, and a defendant cannot, therefore, in the absence of a statutory definition of the term, be convicted for misbranding in violation of the Pure Food Act of May 13, 1909, P. L. 520, upon proof

that he sold a portion of the neck or jowl of the hog which had been given a bacon cure, under a distinctive trade label, including the term bacon, in the absence of proof that the article was sold for the same price as or was represented to be ordinary bacon; and this is particularly so where the label had been approved for use in interstate commerce by Federal authorities under the Act of March 4, 1907, 34 Stat. of L. 1262, which likewise prohibits misbranding': *Commonwealth v. Joseph, 30 D. & C. 98.*

" '1. At least in the absence of a statutory definition or a ruling made under statutory authority, it is not a violation of the Pure Food Act of May 13, 1909, P. L. 520, to sell, cured cuts from the jowl of a hog as "bacon square".'

" '2. Even though the Secretary of Agriculture of Pennsylvania has, pursuant to the power conferred upon him by section 8 of the Act of May 13, 1909, P. L. 520, ruled that bacon is the cured and smoked meat of the breast pieces, sides and belly of the pig, and that the jowl and back do not constitute bacon, a conviction for misbranding cannot rest upon such ruling in the absence of evidence that it was filed in accordance with the provisions of the act or that the defendant had actual notice thereof': *Commonwealth v. Priski, 31 D. & C. 592.*

"There is nothing in the instant case to show that defendant had actual knowledge that the Secretary of Agriculture had restricted the definition of 'hamburger' to the definition given by Dr. Gensler, the food chemist who appeared for the Commonwealth. It follows, therefore, that defendant must be found not guilty."

It should be noted that the Sausage Act, as amended June 25, 1941, P. L. 204, sec. 1, 31 PS §902, states:

". . . If it bears a name descriptive of kind, composition or origin its contents shall correspond to the

kind, composition or origin indicated by such name."

It should be noted that this act provides for a situation such as in our case, because the term "hamburger pattie" is a name descriptive of a kind, composition and origin, and in this case it corresponds to the kind, composition or origin indicated by such name. In other words, when defendants offered for sale a "hamburger pattie" they were offering an article composed of hamburger and something else. Webster, in his dictionary, defines "pattie" as being a "small cake" or "pastry". In our case the pastry which was included in the "hamburger pattie" was bread crumbs or bread, and therefore by complying with the last portion of the act heretofore referred to, defendants did everything they were obligated to do under the act to put the public on notice that they were not receiving hamburger meat without having added the pastry in the nature of bread. If defendants had offered for sale hamburgers or hamburgers, and held out to the public that the purchaser thereof was receiving an article which was not "adulterated", to use the term in the act, by the addition of cereal and other products, they certainly would be guilty, but in this case, having put the public on notice that they were selling "hamburger patties", for this very reason this conviction cannot stand.

If the Department of Agriculture had intended "hamburger patties" to be included under the definition, they would have done so, and section 709 of the regulations would have included the term "hamburger patties". This was not included by the department, and since a criminal statute must be strictly construed, defendants must be discharged.

And now, December 22, 1952, the action herein is dismissed and defendants discharged. The costs are placed upon the County of Lehigh.